JBLU, Inc. v. United States Mr. Pollack. Good morning. My name is Elon Pollack and I represent JBLU, J-B-L-U, the appellant in this action, and may it please the Court. The problem with this case is really looking at the Customs Statute 19 U.S.C. 1304, which provides for marking of merchandise so that the ordinary purchaser in the United States can determine whether the product is domestic or foreign, and gives them a choice whether to purchase the product on that basis. Am I missing anything? Isn't the only difference between 13447 and 46 the size? Is that the only difference is the size? Essentially. Yeah, okay. And one of them involves a trademark and the other one doesn't, and that's why if it's a trademark we let you make it bigger and don't make you make the made-in-China thing quite as large than the other one. If it's not a trademark, we make you make it a comparable size. That's the only difference, right? Really. For the most part, yes. And then also the question is where under 46, whether the mark appears in close proximity to the non-origin designation. Well, they both say appear in close proximity. Oh, the other one says or in some other conspicuous location. Oh, I see. Got it. Okay, another difference. But this case really concerns, I'll just get to the heart of it, this case really concerns whether Customs' decision to limit the application of 13447 to trademarks where an application is filed and with the USPTO and the date of the application. It has no bearing on whether the consumer is going to be fooled or misled about the origin of the article. Can I ask you this question, and I realize this is not something that I think I can really find in the red brief, but why would one think that 46 and 47, if I can use that shorthand, are mutually exclusive? They don't read as mutually exclusive. Why isn't in substance what the government is doing is saying they're not mutually exclusive, but for some trademarks, we will apply only the 47 waxer standard, and we will say 46 won't apply to some trademarks, namely those trademarks which are either registered or the subject of a still live application. One can contemplate why one might do that, and as I say, the red brief does not make this particular argument, but it's not clear to me that the HQ letter from Customs isn't understandable that way. Let me see if I can understand. I guess the 46 was amended in 1997. One of the comments that Customs analyzes is the question of whether to get rid of 47, because if there's a trademark, it still implicates 46, and you're still dealing with the close proximity and conspicuousness of a particular origin mark. And there's a potential for confusion, right? 46 is all about potential for confusion, right? 1304 is all about confusion. We're not talking about the statute. We're talking about the regulations right now. Yes, it's about confusion and the lack of confusion. In this case, it's particularly... You could have confusion with trademarks. You could even have confusion with registered trademarks, confusion about geographic origin. Why? Maybe I'm just missing something, so tell me. The government appears to accept the proposition that something is either in 47 or in 46, but never both, and I don't really understand why we're proceeding on that premise. Except that the government is not pressing the other view, but what's the basis for that premise? Let me see if I understand. The Customs will, where there's a trademark, you already know the origin of the goods by virtue of the brand, not necessarily the location that's stated in the brand, I think. And Customs enacted this distinction where certain companies will take advantage of their locale in order to promote their products. Customs is saying, fine, if that's a trademark, then we'll allow you to mark the goods conspicuously because we know no one is going to be confused about the origin or non-location, non-origin of that particular merchandise. Does that answer your question? Let me just try it once more. 46 says we have a standard, if you use a particular kind of geographic set of words, USA, United States, whatever, if there's a real likelihood of confusion about that consumers may get in their head the wrong idea about where these things came from, you're going to have to mark it in a particularly conspicuous way. 47 says if you have a trademark, you have to mark in a less conspicuous way. No, they both require conspicuousness. Less conspicuous. We went through this before. Larger, smaller, nearer, further, we're talking about disparities in the way you have to mark, right? Yes. So why in the world can there not be an application of 46 to a registered trademark? Tell me the regulatory language that says a particular pair of jeans with a particular set of words that include USA on them is in one category or the other but never both. Because the regulation 47 provides for a more lenient standard if the mark is a trademark. Even if there is a likelihood of confusion. The idea of the trademark, though, is it distinguishes one's goods and that no one would be confused because they know the source of the goods based on that trademark. They know who is providing the goods. They don't know where the goods are coming from. Of course. Geographic origin versus supplier origin. Would your argument possibly be the structure of the regulations? 46 comes first and is the general one and 47, which comes after it, creates a bit of an exception and in fact even begins when as part of a trademark, almost like keying in on the prior section. When as part of a trademark. So here's what the one right before it says and now when that thing before is now part of a trademark, this is what applies. Would you want to make a regulatory structure argument? My point is that customs carved out that exception when there is a trademark. I think that's really what's happening here. You refer to, I think, a regulatory history. What is the sequence? 46 came first, 417? No, they were enacted at the same time. In 1968 originally. And is there commentary in the Federal Register that says we do actually understand these to be mutually exclusive categories? Unfortunately, I didn't research any specific history for the 68 Amendment, but for 1997 I did. And in 1997, customs said, we're not really sure why we have a 47 at this point and we may actually promulgate a regulation to, promulgate a notice to get rid of it because they're basically one and the same. If you have the trademark, we can make that distinction where there's a trademark under 46. But over the last 27 years, customs never, never enacted or proposed any general notice or rule that says we're going to change that and it's still on the books. So you have this distinction, this dichotomy between trademark and non-trademark marking, for lack of a better word. In our client's case, the problem really is customs' decision creates an artificial rule that says if you file for a trademark and the application is filed, we're going to give you the more lenient marking structure as opposed to a mark that's not filed with the Patent and Trademark Office. And wait, just to be clear, that could have been enacted, right? I mean, even though you don't love it and think that there are some shortcomings of it, that could have been a decision that people would have made. We want to encourage people, if they're going to use something as a trademark, to take any confusion off the table, to register it so it's clearly known by everyone and they could have said in this regulation for federally registered trademark. And that's the problem because the regulation doesn't say that Customs has never put out any notice to the public that says if you apply for a trademark, we're going to give you the lesser marking standard. And now, in this particular case, they've created this artificial dividing line. Right, and at least, I mean, I kind of took one point of Judge Moore's question to be, you have an argument about the regulatory language that is strong. Thank you. Trademarks are not limited to registered or applied for trademarks. You started making an argument about how a distinction between those and other trademarks, trademarks for which application has not been sought or obtained or rejected, that that's artificial. That's a more challenging argument. It's about whether the distinction could make any sense had it been adopted in the regulation. No, I'm not saying that, Your Honor. What I'm saying is, is that even if we accept the filing of the application to be a dividing line between we're going to accept it versus not accept it, the date of filing should not be what's triggering whether a consumer is going to be confused and require a more stringent marking requirement. If you're filing a trademark based on use, you're already using this mark, and Customs created this artificial dividing line. You may not be using it in a way which communicates that consumers will view it as a supplier origin identifier as opposed to a geographic identifier. The fact that you have used it, which is a requirement for registration, does not itself tell you what meaning consumers will take away from it, which is why it seems to me, at least superficially, again, we're now talking about the kind of unreasonableness point, the artificiality point, the relation between 4.6 and 4.7 point. It seems to me on its face crazy to say we need a preliminary marker of whether a set of words that includes USA or United States is being used for supplier identification as opposed to geographical origin, and a registration, an actual registration, or even a certification by an applicant for registration is some evidence that that is how it is being used, and so there's less likely to be confusion about geographic origin because people will more likely simply understand it to mean it's mine rather than yours. It seems to me it's a little hard, definitely harder than your textual argument to say this is a completely irrational line as opposed to it's just not the line that's in the regulation. I agree with you. Maybe you should save the rest of your time for rebuttal after this. And I'm going to save the rest of my time. There you go. Thank you. Tell me how to say your name, please. Vanderweide. Okay, Mr. Vanderweide, please proceed. Your Honors, may it please the Court. This Court should affirm the trial court's decision that JBLU's merchandise was not properly marked in accordance with 19 CFR 134.46. This Court should also affirm the trial court's decision that customs interpretation of the trademark within the meaning of 47 as applying to those marks that are either registered with the Patent and Trade Office or have an application pending is entitled to substantial deference because the regulation itself is silent as to what evidence. Can you help me? Yes. I hope I was clear. Maybe I wasn't. On this threshold question, I don't think you've made this argument, but is there some reason in the text or otherwise that you take as a premise, which I think you do, that either 46 applies or 47 applies, but not both? Yes. Why is that? I think it's because 46 is specifying if a locality name could mislead or deceive. I think 47 presumes that if there's a trademark, a registered trademark, or an application for trade... Let's just use the language of the regulation. Okay. It says if there's a trademark, you have to basically give a weaker form of geographical notice. Exactly. Because 46 is saying that under each name that could be confused, there has to be a permanent marking for the correct country of origin and comparable size. That could be read if there's all over the genes in this case, if there's a confusing country of origin locality, there would have to be the correct marking next to each of those names. Whereas 47 just requires a conspicuous location. It could be just once. It could be just once. In this instance, for those goods that came in after the application date of JBL's merchandise, close proximity was deemed okay if it was just a made in China label inside the waistband of the pants. But for those that came in before where there was no application or evidence that it was registered where the patent and tradeoff is, then those genes were subject to the more strict standards. That would have to be anywhere on the goods that there is that confusing locality name. There is that dividing. Was there something in, I guess, I think Mr. Pollack referred to the 1968 regulatory promulgation of these two rules. Is that right? Yeah. Was there something in that promulgation that said, even though there's no language saying that when 47 applies, 46 doesn't, that we mean that? There's nothing logically inconsistent, right? Because you could have a trademark that in turn has the property of being what 46 says, is it likely to mislead or may mislead or deceive, right? So that if you could prove that, if you, the government, could prove that as to a trademark, you would still apply the 46 standard even though the matter was in 47, say it was a registered trademark. I think 47 assumes that there's not going to be that likelihood to mislead and deceive because there is a trademark. But that means that your argument really does depend on our saying, trademark can be interpreted to be a subset of trademarks. Yes, exactly. I mean, I understand that marks, you know, under the Lanham Act can apply to both registered and unregistered, claimed or unclaimed. But that's usually in the context of an intellectual property right in terms of benefiting the holder of that mark, a business entity, whereas the regulations as interpreted and enforced by customs, they're looking out for the consumer. They're trying to prevent consumer deception. It's not about the mark holder, it's about whether somebody is going to pick up these genes and be confused as to what's the country of origin of this merchandise. And that's consistent with the marking statute. And this is something that customs... Is it that something that's not a registered trademark doesn't satisfy that? I mean, I don't understand why having a common law trademark somehow makes it so you should have a heightened standard for the reasons you're saying. I think it's beyond the purview of customs jurisdiction in order to investigate whether a mark is actually being used. You know, in commerce, it's just, you know, it's looking at the goods, making sure that they're marked. My problem with your argument is it's the exact same argument that Judge Toronto shut down your opponent on, which is you're making an argument as to why it would be good to view this regulation as applying to registered trademarks. You're sort of defending a policy choice to limit it to registered trademarks, and you're explaining why, but that's not the issue. The issue in front of us is a pure regulatory interpretation issue. The common definition, the standard definition of trademark in every forum, including the intellectual property laws enacted by Congress, include common law trademarks. Yes. That is the plain and ordinary meaning of that word. Why then is there ambiguity such that if that is the plain and ordinary meaning, and you said yes a second ago, and I mean, I don't see how you couldn't say yes. You'd be disingenuous not to, just so you know. But given all of the evidence, I don't know how there's any ambiguity in this regulation such that any deference to any agency decision-making is warranted. Because the regulation itself does not define the term trademark for purposes of the regulation. No, no. The regulation itself doesn't say federally registered or common law trademark. It just says trademark. Exactly. But the plain and ordinary meaning of trademark in every dictionary, in every textbook, and in all federal legislation related to intellectual property rights, includes both federal registered trademarks and common law trademarks. Don't we presume when regulations are enacted or when statutes are enacted that those who are enacting them are aware of the plain and ordinary meaning of words, especially as they are used and defined in other statutes and regulations? I would say that the plain meaning of the term trademark, as you described, does not apply in this instance because there is that silence and ambiguity for the purpose of country of origin marking regulations, as opposed to the benefits of an intellectual property right of the holder of a mark, you know, part of the Lanham Act, as you described the term trademark. In those other contexts, this is a limited context, and it's about customs enforcing its obligation to enforce its own regs that are promulgated in accordance with the country of origin marking statute. So it's a trademark within that context, specifically within that context. So there is a certain amount of ambiguity because it's not defined, the term trademark, within that context. Well, it's the word trademark is defined. Under the Lanham Act, yes. And in every dictionary. You did not introduce a single piece of evidence of any kind, extrinsic evidence, that indicated anywhere that the word trademark is defined in any context as federally registered trademarks. Correct? Am I misunderstanding the record? No, no, no. You're correct, Your Honor. I mean, that is correct. But dictionary definition. You would like me to nonetheless find a word ambiguous, despite the fact that it is defined, according to this record, in an enormous number of sources, consistently, as including both. But you'd like me to nonetheless find it's ambiguous. Why? Because it's a customs reg, and I'm supposed to think customs is just generally ambiguous? I don't understand. I don't think that's the distinction, Your Honor. Well, clearly not. Yeah. Because that was kind of sarcastic. I understand your point. I understand what you're saying. But even dictionary definitions do distinguish between marks that are registered and not registered. If you're bringing a suit for trademark infringement, it has to be a registered mark. If you're suing on a likelihood of confusion, in addition of one of the- But all the statutes say that. If you want to bring suit for infringement, you have to have a quote, this is what the statute says, a federally registered trademark. They don't use the word trademark interchangeably with federally registered trademark. I understand, Your Honor. I mean, you realize the problem with your argument is regulatory and statutory interpretation is really important. And I take my obligation to give deference to agencies very seriously, as does everyone on this court. But it would be really problematic if we started going down the road of saying a word that has universal common understood meaning and every piece of evidence in the record says it means this, is nonetheless ambiguous just because the agency that wrote the statute wants to say it means something contrary to its plain and ordinary meaning. I can't do that. It has nothing to do with this case. It has to do with just the process of regulatory interpretation and how it's supposed to work. I understand your point, Your Honor. But you guys can always go back and amend this reg at any point, right? It's true. It's true. You can fix this. This is a problem of your making. I mean, there are the two regs, and there needs to be a method in order to distinguish the two regs. And so that's what Customs has done consistently for the past 25 years. And it's a bright line test. Has the question of the application for registration come up before? In terms of what? Whether 47 applies to a set of words that the importer asserts is a trademark and doesn't have a registration for, but has an application on file for? Yeah. A non-rejected application. A non-rejected application would designate that the more relaxed requirement of 47. Right. But has that come up before? I'm sorry. Go ahead. Has that come up in terms of Customs ruling? I guess I'm sort of trying to figure out, following a little bit on Judge Moore's question. As between doing something that is sort of for us institutionally quite extraordinary of saying trademark doesn't really mean trademark, and you're fixing this, I'm sort of trying to understand is this a new problem, or has this regulation been sitting here for a long time with a series of applications of this regulation that present this very difficulty? This issue doesn't come up very often, Your Honor. Some of the rulings that discuss the country of origin markings, Customs rulings, really are the early 90s. So there's not been a lot of movement on this issue for a long time. So Customs, during this long stretch of time from the early 90s, has been consistently looking, do you have an application for a trademark, or is it a registered trademark? I understand that the concept of trademarks is bigger than how Customs restricts it in this instance, but it's done so consistently for 25 years within the context of just the country of origin marking statute and regulations. It's not investigating whether something is used as a trademark generally. It doesn't have the resources to do that, Customs says. That's for the Patent and Trade Office to weigh in on, and that's for the courts to weigh in on, but it's not for Customs to weigh in on. Sounds like a pretty good statement of basis and purpose for a reformed regulation. I understand. Do you have anything else you'd like to add? I would love for the trial courts' decision below. Thank you for your time, Your Honor. Yes. The clock is accurate. I'd like to just make a few points. Going back to your point, Your Honor, about trademark, the rulings that counsel refers to and that are included in the appendix as well, I think in one of the addendum, only state that the application for trademark is evidence of the trademark. It's not determinative of anything else. Customs will consider it as evidence rather than require anything more from that particular importer. Filing the application serves that singular purpose, and the rulings that they've issued over time say that routinely. At least since 1989, Customs recognizes we've not defined the term trademark. We need to fix it. We'll get around to it. They said it in rulings in the early 90s. They said it in the rulemaking in 1997, and they've said it, I believe, since then as well. And they've never done it. So to me, the word trademark is clear and unambiguous. Can I ask you two case-specific questions? One, do you guys have 350,000 pairs of jeans sitting in a warehouse for the last five years? No, Your Honor. What's the status of these entries? The status of the entries is that Customs has, I believe, liquidated the entries. They've assessed 10% marking duties for failure to mark, and they've also made hundreds of thousands of dollars of claims for liquidated damages for not marking them within the period of time. So that all hinges on this decision as well. The other point that I wanted to make... Let me drive my second question. Did you submit evidence to Customs about the trademark status of your markings? We submitted it. Yes, Your Honor. We submitted the trademark applications to Customs in connection with the protests that were filed with these cases. They had that information. And what do the applications say about not just that these markings were used in commerce before, but something about, if anything, about their use as a supplier identifier? Well, it identifies the owner of the mark. It identifies the mark itself. It says it's a stylized word, a stylized word marking. I'm not a trademark expert. And that it's been in use since at least 2005. Now, there are some genes, though, that you didn't file an application on. The ones, the Los Angeles genes? Yes, Your Honor. In fact... What did you do with respect to those? Did you submit evidence of common law trademark on those? Did you submit evidence of a common law trademark on those? We didn't submit evidence, I believe, of a common law trademark on the assessed file in Los Angeles, but all of the genes are marked identically. And in fact, if you look in the appendix, you'll see that the country of origin is located next to the CTUSA genes mark. So the question is whether the Cestois Los Angeles mark supersedes a different mark that's on the genes. Every pair of genes has a CTUSA mark. And the country of origin marking is right above it. And if you look in the appendix, you'll see on pages, I think it's page 40, page 44, you'll see pictures of the marking on the genes. And as the Court knows, anybody who's ever purchased a pair of pants, the first thing they do is look at the color and then look at the size. And that country of origin marking is displayed directly over the size and other information concerning those pants. We would hope that the Court would reverse the decision of the CIT. Thank you very much. Thank you, Mr. Pollack. I thank both counsel. The case is taken under submission.